68 F.3d 356
 95 Cal. Daily Op. Serv. 8182, 95 Daily Journal
D.A.R. 14,076
Domingo Guevara CARUNCHO; Susan Baylon Caruncho; Sir Jason
Baylon Caruncho; Ser Nelson Baylon Caruncho;
Richardson Baylon Caruncho, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Sir Jason Baylon CARUNCHO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 93-70448, 94-70753.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1995.
Decided Oct. 19, 1995.
 
 Martin Resendez Guajardo and Kim Pederson, Law Office of Martin Resendez Guajardo, San Francisco, California, for petitioners.
 Robert Kendall, Jr., and Terri J. Lavi, Department of Justice, Washington, D.C., for respondent.
 Petition to Review Decisions of the Immigration and Naturalization Service.
 Before: HALL, WIGGINS, and LEAVY, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Petitioner Domingo Guevara Caruncho, along with his wife and three sons as additional petitioners (Petitioner), requests review of the Board of Immigration Appeals' (BIA) summary dismissal of his appeal from a final deportation order. Petitioner argues that his Notice of Appeal form EOIR-26 was sufficiently specific, and that the dismissal procedures used by the BIA did not comport with due process. Petitioner also argues that the BIA abused its discretion by denying his motion to reopen.
 
 
 2
 Additionally, Petitioner's son, Sir Jason Baylon Caruncho, contends that the BIA abused its discretion in denying his separate motion to reopen based on his marriage to a newly-naturalized citizen of the United States.
 
 
 3
 For the reasons set forth below, we conclude that we do not have jurisdiction over Petitioner's appeal from the BIA's summary dismissal. Pursuant to 8 U.S.C. Sec. 1105a, we do have jurisdiction over Petitioner's and Jason Caruncho's appeals of the BIA's denials of their motions to reopen. We affirm the denials of the motions to reopen.
 
 I.
 
 4
 Petitioner is a native and citizen of the Philippines. Nearly seven years ago, in October, 1988, he entered this country on a six-month tourist visa. On May 9, 1989, more than seven months later, the Immigration and Naturalization Service (INS) commenced deportation proceedings against Petitioner by ordering him to show cause why he should not be deported from the United States for overstaying his nonimmigrant visa in violation of 8 U.S.C. Sec. 1251(a)(1)(B). Petitioner admitted his deportability, and applied for asylum pursuant to 8 U.S.C. Sec. 1158, and for withholding of deportation pursuant to 8 U.S.C. Sec. 1253(h). Alternatively, Petitioner requested voluntary departure under 8 U.S.C. Sec. 1254(e).
 
 
 5
 At the deportation hearing on February 23, 1990, the Immigration Judge (IJ) delivered an oral decision denying Petitioner's application for asylum and withholding of deportation, and granting him voluntary departure by June 1, 1990. On March 2, 1990, Petitioner timely filed a Notice of Appeal from the decision of the IJ with the BIA. Petitioner attached an addendum with his Notice alleging that the IJ abused his discretion in denying his asylum application, and indicated--both on that addendum and on the form itself--that he would submit an appellate brief following receipt of the transcripts of the oral decision. Despite these promises, and following receipt of the requested transcripts, Petitioner never submitted a brief.
 
 
 6
 On December 28, 1990, the INS moved for summary dismissal of Petitioner's appeal, citing the Notice of Appeal's lack of specificity, and dilatory purpose. On February 13, 1992, the BIA granted the Government's motion, summarily dismissing Petitioner's appeal for lack of specificity, as provided by 8 C.F.R. Sec. 3.1(d)(1-a)(i)(A), and ordering voluntary departure within 30 days.
 
 
 7
 On May 8, 1992, Petitioner timely filed his first petition for review in this Court, thereby staying the deportation order. Shortly thereafter, however, Petitioner moved to withdraw the petition for review. On August 26, 1992, this Court allowed Petitioner to withdraw his petition, and stayed the deportation order for 60 days in order to allow him to file a motion to reopen the proceedings with the BIA.
 
 
 8
 On September 17, 1992, Petitioner moved to reopen his deportation proceedings with the BIA, and to stay the deportation order. About a week later, the BIA issued its refusal to consider Petitioner's motions because deportation was not imminent. Approximately five months later, however, the INS served Petitioner with notice to surrender for deportation on March 10, 1993. In light of imminent deportation, on February 23, 1993, Petitioner again moved to reopen. On May 4, 1993, the BIA denied Petitioner's motion to reopen.
 
 
 9
 Petitioner then petitioned this Court a second time on May 20, 1993. He sought review of the BIA's denial of the motion to reopen, as well as of the underlying deportation order and summary dismissal. As a consequence of petitioning for judicial review, the deportation order was stayed once again.
 
 
 10
 On May 15, 1992, during the course of these events, Jason Caruncho married Cherie Sagueco, a lawful permanent resident of the United States. While awaiting the BIA's decision regarding Petitioner's second motion to reopen, Sagueco filed a relative immigrant visa petition on behalf of Jason Caruncho. On April 29, 1993, the INS approved that petition. Around this time, Sagueco asked the INS to expedite her pending naturalization application.
 
 
 11
 Sagueco was naturalized as a United States citizen on February 15, 1994. On the basis of his marriage to Sagueco, Jason Caruncho moved to reopen his deportation proceedings, and to seek adjustment of status to permanent resident pursuant to 8 U.S.C. Sec. 1255. On August 17, 1994, the BIA denied Jason Caruncho's motion to reopen. On November 14, 1994, Jason Caruncho timely petitioned this Court for review of that denial.
 
 
 12
 II. JURISDICTION TO REVIEW THE SUMMARY DISMISSAL
 
 
 13
 8 U.S.C. Sec. 1105a(a)(1) states that "a petition for review may be filed not later than 90 days after the date of the issuance of the final deportation order." This Court has recognized repeatedly that statutory time limits are "mandatory and jurisdictional." Hernandez-Rivera v. INS, 630 F.2d 1352, 1354 (9th Cir.1980) (quoting United States v. Robinson, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960)). Jurisdiction lies over an untimely immigration appeal, therefore, only in rare instances. See, e.g., Hernandez-Rivera, 630 F.2d at 1355 (holding that the BIA can assert jurisdiction over late notice of appeal where there has been "official misleading as to the time within which to file a notice of appeal").
 
 
 14
 Here, the BIA summarily dismissed Petitioner's appeal on February 13, 1992. This summary dismissal constituted a final deportation order for the purposes of the statute. Stone v. INS, --- U.S. ----, ----, 115 S.Ct. 1537, 1542, 131 L.Ed.2d 465 (1995). We now have before us, however, a petition for review of the summary dismissal filed May 20, 1993, more than a year later. In our view, this observation should end the inquiry. The petition before us was filed more than ninety days after the issuance of the final deportation order of which it seeks review.
 
 
 15
 The Petitioner nonetheless makes several arguments in support of jurisdiction that we find unpersuasive. Primarily, he asserts that his filing and subsequent withdrawal of his timely-filed first petition somehow confers jurisdiction over the underlying deportation order, despite that the petition before us is untimely on its face. We addressed a similar argument in Chudshevid v. INS, 641 F.2d 780 (9th Cir.1981). In Chudshevid, we held that when an alien filed neither a motion to reconsider nor a petition for review within the time limit prescribed by section 1105a(a)(1), our jurisdiction attached to the BIA's denial of the motion to reconsider, but not to the underlying final deportation order.[1] 641 F.2d at 784. Here, the Petitioner filed a first petition for review within the ninety-day period, but later withdrew it. He also failed to file a motion to reopen or a motion to reconsider within the ninety-day period. Thus, unless the first petition for review has some legal significance to the timeliness of the second petition, Chudshevid controls and we lack jurisdiction to review the underlying deportation order.
 
 
 16
 The Petitioner, however, argues that the first petition does have legal significance. Specifically, he argues that the timely filing and subsequent withdrawal of the petition for review "tolled" the ninety-day period, rendering his second petition timely. We reject this argument, for several reasons.
 
 
 17
 First, it calls upon us to extend a tolling doctrine that, although this Court had long approved, the Supreme Court recently rejected. This Court first established a tolling doctrine for late-filed petitions for review in Bregman v. INS, 351 F.2d 401 (9th Cir.1965). According to the tolling rule, a motion to reopen or reconsider, or a petition for review filed within the statutory time limit would make "an otherwise final appealable order ... no longer appealable in this court until the motion is denied or the proceedings have been effectively terminated." Hyun Joon Chung v. INS, 720 F.2d 1471, 1474 (9th Cir.), cert. denied, 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984). In other words, a motion to reopen or a petition for review filed within the section 1105a(a)(1) limit would serve to toll and restart that time limit. If the motion was denied and the applicant wished to petition for judicial review, the reviewing court would then have jurisdiction over both the denial of the motion to reopen, as well as the underlying order.[2]
 
 
 18
 The Supreme Court, however, expressly disapproved this rule in Stone, --- U.S. ----, 115 S.Ct. 1537. In Stone, the Supreme Court settled a dispute among the Circuits involving use of the tolling doctrine. It rejected the tolling rule in favor of the no-tolling rule adopted in the Courts of Appeals for the Sixth, Seventh, and Third Circuits, see Stone v. INS, 13 F.3d 934 (6th Cir.1994); Akrap v. INS, 966 F.2d 267 (7th Cir.1992); Nocon v. INS, 789 F.2d 1028 (3d Cir.1986). It held that "a deportation order is final, and reviewable when issued. Its finality is not affected by the subsequent filing of a motion to reconsider." Stone, --- U.S. at ----, 115 S.Ct. at 1549.
 
 
 19
 We think that the Petitioner's argument that his filing of the first petition within the ninety-day prescribed period should toll the running of the limitation period is, in essence, a request that we expand the now-defunct tolling doctrine. We decline, however, to glom an exception onto the ninety-day limitation period when the only theoretical justification for doing so is the expansion of a doctrine the Supreme Court has rejected.
 
 
 20
 Furthermore, we perceive no functional difference, for purposes of the ninety-day limit, between the Petitioner's first petition and a motion to reopen or motion to reconsider that might distinguish this case from the case before the Supreme Court in Stone. None of these filings alters the finality of the BIA's dismissal. In addition, we see danger in the contrary rule, which would encourage an alien to file a petition for review--thus staying his deportation and granting him time to search for new evidence--then withdrawing his petition in order to file a motion to reopen or reconsider, then, if his motions were denied by the BIA, simply filing a new petition for review. This cycle could continue endlessly unless we hold, as we do today, that a petitioner has ninety days from the date of the final deportation order to file his petition for review, notwithstanding any intervening motions or petitions he may choose to file.
 
 
 21
 We therefore reject the Petitioner's argument that his first petition, which was timely filed, tolled the period in which to file his second petition.[3] We dismiss the Petitioner's Petition for Review insofar as it seeks review of the summary dismissal.
 
 III. DENIALS OF THE MOTIONS TO REOPEN
 A.
 
 22
 We review the BIA's denials of both the Petitioner's and Jason Caruncho's motions to reopen for abuse of discretion. Padilla-Agustin v. INS, 21 F.3d 970, 973 (9th Cir.1994). We defer to the decision of the BIA unless we find that it acted in a manner "arbitrary, irrational, or contrary to law." Id. (quoting Ahwazi v. INS, 751 F.2d 1120, 1122 (9th Cir.1985)); see also Santana-Figueroa v. INS, 644 F.2d 1354, 1356 (9th Cir.1981).
 
 B.
 
 23
 The law is well settled that the BIA may deny a motion to reopen for any one of at least three reasons: "failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992); see also 8 C.F.R. Sec. 3.2; 8 C.F.R. Sec. 103.5(a)(2). Motions to reopen are permissive forms of relief over which the Attorney General has "broad discretion," INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992) (quoting INS v. Rios-Pineda, 471 U.S. 444, 449, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985)).
 
 
 24
 The Petitioner argues that the BIA should have granted his motion to reopen because he had just recently retained counsel. His counsel had prepared an appellate brief, which the Petitioner wished to submit. The Petitioner contends that this brief itself constituted new, material evidence justifying a reopening of the deportation proceeding pursuant to 8 C.F.R. Sec. 3.2. He also argues that the BIA applied the wrong standard when it held that his motion to reopen did not meet the "heavy burden" standard outlined in INS v. Abudu, 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).[4] We need not decide whether the BIA applied too high a standard, however, because we conclude that, under any standard, Petitioner's appellate brief does not constitute new evidence.
 
 
 25
 The applicable regulation provides in part:
 
 
 26
 Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing....
 
 
 27
 8 C.F.R. Sec. 3.2 (emphasis added). The Petitioner, however, concedes that he presented no new facts or evidence in his motion to reopen. Rather, he argues that the brief in support of his appeal constitutes new evidence simply because he was previously unable to retain counsel to prepare one. We find this argument less than compelling. Injustice results when new evidence that bears on a petitioner's claims is precluded from consideration; it does not result when identical facts are precluded from being presented in a different format. Faced with the same facts in different form, the BIA had no choice but to deny the motion to reopen, and did not abuse its discretion in doing so. Cf. Doherty, 502 U.S. at 325-26, 112 S.Ct. at 726 (reading section 3.2 as imposing a requirement of "unforseeability" regarding the evidence presented in the motion to reopen) (plurality opinion).
 
 
 28
 With respect to the denial of Jason Caruncho's motion to reopen, the BIA found that he, too, had failed to present any new evidence. The BIA also took into account his involved history of litigation, concluding that it was a "blatant example of the reliance on dilatory tactics to gain an immigration advantage." A.R. at 4. Even assuming that Jason Caruncho and Cherie Sagueco's marriage itself was not entered into for purposes of manipulation, the record nonetheless clearly shows that Jason delayed his deportation at successive moments awaiting Cherie Sagueco's naturalization. In light of his already-prolonged deportation proceeding, Petitioner could reasonably be said to have delayed his deportation while awaiting the naturalization of his wife so that she could sponsor him as a citizen. The BIA did not err in pointing out this strategy. The BIA considered Jason Caruncho's marriage to a newly-naturalized citizen, and exercised its discretion to deny his motion to reopen. Given the near seven-year litigation history leading up to the present claim, we conclude that the BIA was neither arbitrary nor unfair.
 
 
 29
 Jason Caruncho also contends that the BIA abused its discretion by failing to consider his marriage, and the potential hardship to him and his spouse. To be sure, the BIA must "state its reasons and show proper consideration of all factors when weighing equities and denying relief." Yepes-Prado v. INS, 10 F.3d 1363, 1366 (9th Cir.1993). The BIA, however, properly considered both of these factors. The government rightly points out that equities flowing from his marriage should be given little weight because it took place on May 15, 1992, three months after the BIA's summary dismissal/final deportation order of February 13, 1992. See Obitz v. District Director of INS, 623 F.2d 1331, 1333 n. 2 (9th Cir.1980) (en banc) (suggesting that an alien's marriage entered into subsequent to an order of deportation does not create substantial equities in the alien's favor).
 
 
 30
 Furthermore, the BIA has the authority "to construe 'extreme hardship' narrowly should [it] deem it wise to do so." INS v. Jong Ha Wang, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam). The BIA reasonably and within its discretion concluded that Jason Caruncho and his wife would not suffer extreme hardship either from going to the Philippines together, or from separating temporarily. As both the BIA and the government note, Jason Caruncho is not barred from immigrating to the United States through the consular process outside of the country.
 
 
 31
 The BIA's denials of both Petitioner's and Jason Caruncho's motions to reopen are affirmed.
 
 IV.
 
 32
 The petition for review of the BIA's summary dismissal of the appeals of Domingo Guevara Caruncho, Susan Baylon Caruncho, Sir Jason Baylon Caruncho, Ser Nelson Baylon Caruncho, and Richardson Baylon Caruncho (I&NS Nos. Anh-xnt-pxu, Acq-jty-ukr, Ajg-teg-pbw, Alb-cma-mqy, and Arb-csk-jps, respectively) is dismissed for lack of jurisdiction. The petition for review of the motions to reopen of Domingo Guevara Caruncho, Susan Baylon Caruncho, Sir Jason Baylon Caruncho, Ser Nelson Baylon Caruncho, and Richardson Baylon Caruncho (I&NS Nos. Azx-whr-jal, Arz-xit-iwt, Akr-vvh-azg, Aav-zfe-gmy, and Afu-iht-xks, respectively) is denied. The petition for review of the motion to reopen filed independently by Sir Jason Baylon Caruncho (I&NS No. Avi-wnd-fmz) is denied.
 
 
 
 [1]
 The regulation governing this case provides that motions to reopen may be filed at any time. 8 C.F.R. Secs. 3.2, 3.8, 103.5 (1992). As amended January 11, 1994, however, 8 C.F.R. Sec. 103.5(a)(1) requires that motions to reopen filed with the INS must be submitted within 30 days of the decision in question. Motions filed with the BIA are still governed by 8 C.F.R. Secs. 3.2 & 3.8, which contain no such limitation period
 
 
 [2]
 Bregman spawned a body of tolling rule cases in this Circuit. See, e.g., Berroteran-Melendez v. INS, 955 F.2d 1251 (9th Cir.1992). The Courts of Appeals for the Eleventh, Fifth, and District of Columbia Circuits adopted similar tolling rules. See Fleary v. INS, 950 F.2d 711 (11th Cir.); Pierre v. INS, 932 F.2d 418 (5th Cir.1991) (per curiam); Attoh v. INS, 606 F.2d 1273 (D.C.Cir.1979)
 
 
 [3]
 We further note that even if it did toll the ninety-day period, so that a new period began upon withdrawal of the first petition, the Petitioner here failed to file his second petition within ninety days of the withdrawal. Thus, the Petitioner would be unable to take advantage of the very rule he presses us to adopt
 
 
 [4]
 The Supreme Court in Abudu stated that an applicant who advances a request for asylum for the first time in a motion to reopen bears a "heavier burden" than does an applicant who makes his request first to the IJ. Abudu, 485 U.S. at 111, 108 S.Ct. at 915. Subsequent opinions of the BIA have implied that all motions to reopen must meet the heavy burden standard, regardless whether the petitioner is pressing his claim for the first time in the motion to reopen. See Matter of Pena-Diaz, Int.Dec. 3225, at 13 (BIA1994); Matter of Coelho, Int.Dec. 3172, at 5 (BIA1992). For the reasons discussed in text, however, we reserve for another day the question whether this standard, whatever its contours, applies to a motion to reopen that requests relief the petitioner also sought before the IJ