103 F.3d 140
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Oscar Armando PANTOJA-DONA, a.k.a. Oscar Armando Pantoja, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70870, 96-70120.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 6, 1996.*
Decided Dec. 06, 1996.
 
 Petition to Review a Decision of the Immigration and Naturalization Service, No. Avd-eug-wtm.
 BIA
 REVIEW DENIED.
 Before: CHOY, REAVLEY,** and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Oscar Armando Pantoja-Dona petitions to review a final order of deportation by the Board of Immigration Appeals ("BIA"). Pantoja-Dona also petitions to review the Board's order denying the reopening of deportation proceedings before an immigration judge. We deny the petitions.
 
 Factual and Procedural Background
 
 3
 Pantoja-Dona is a fifty-two year old citizen of Nicaragua. He worked in the Ministry of Development and Agrarian Reform ("MIDINRA") under the Sandinista government. He was a member of a planning team, which consisted of both Cubans and Nicaraguans. He began to fear for his life after he voiced opposition to his team's proposal for Cuban-type agrarian reform. In November of 1984 petitioner believed he was being threatened by members of his team. He was later ordered by MIDINRA to go to the mountains in Chontales where he believed he would be killed.
 
 
 4
 On December 22, 1984, Pantoja-Dona came to the United States on a nonimmigrant visa and has not departed since that entry. Although he has siblings and other relatives living in the United States, his children and parents remain in Nicaragua. He has been employed by ISS Building Maintenance, Inc. since July 1987 and has been an active member of the Service Employees International Union, AFL-CIO, Local 87, for the past ten years, the last three of which he has served on its executive board.
 
 
 5
 On August 14, 1989, the Immigration and Naturalization Service ("INS") charged Pantoja-Dona with deportability under INA § 241(a)(2), 8 U.S.C. § 1251(a)(2), for overstaying his nonimmigrant visa. Petitioner conceded deportability but requested asylum and withholding of deportation. On August 13, 1990, the immigration judge denied the request, but granted voluntary departure. At the hearing the IJ took administrative notice that the Sandinista Party no longer controlled the Nicaraguan government, that Violeta Chamorro was elected president and that most of the foreign military and technical advisors from the Soviet Union and Cuba had left the country. E.R. 92. Petitioner appealed to the BIA, which affirmed the decision and dismissed the appeal. Pantoja-Dona timely petitioned this court for review pursuant to 8 U.S.C. § 1105(a).
 
 
 6
 On August 10, 1995, petitioner asked the BIA to reopen his deportation proceedings and consider an application for suspension of deportation. The BIA denied the motion to reopen on December 15, 1995. Pantoja-Dona petitions for review of that decision, which was consolidated with the former petition for review of denial of asylum, on March 11, 1996.
 
 Discussion
 I. ASYLUM AND WITHHOLDING OF DEPORTATION
 
 7
 The Attorney General has discretion to grant an alien asylum if the alien is determined to be a "refugee." 8 U.S.C. § 1158(a). A refugee is any person who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The well-founded fear standard has both a subjective and an objective component. Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995). "The subjective component may be satisfied by credible testimony that the applicant genuinely fears persecution." Id. The objective component requires a showing by credible, direct, and specific evidence of facts supporting a reasonable fear of persecution. Id.
 
 
 8
 We review the factual determinations underlying the BIA's denial of asylum for substantial evidence. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). The BIA's factual determinations must be upheld if supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Id.
 
 
 9
 In reviewing the record, this court "treat[s] the IJ's statement of reasons as the BIA's" where, as here, the BIA did not perform an independent review of the record but rather deferred to the IJ's exercise of discretion. Alaelua v. INS, 45 F.3d 1379, 1381 (9th Cir.1995).
 
 
 10
 The IJ found that Pantoja-Dona was credible and that he met the subjective prong of the well-founded fear analysis but that he failed to introduce objective facts supporting his well-founded fear claim. Pantoja-Dona stated that he was ordered to go to the Chontales mountains where he believed he would be killed. Due to a lack of objective facts to support this belief, the IJ was not prepared to find that petitioner was sent to the mountains to "disappear." E.R. 94. The IJ found that petitioner was a well-educated man who held a prominent position in the planning group and that his occupational responsibilities required him to go to the mountains. E.R. 89, 94. In fact, petitioner stated that he had gone to the Chontales mountains for work on previous occasions. E.R. 89. Furthermore, the IJ found that none of the team members who allegedly threatened petitioner would be following petitioner to the mountains and that there was no evidence that any threat against him could have been carried out. E.R. 95. On the basis of this evidence, the IJ found that petitioner did not establish a well-founded fear of persecution. E.R. 94-96. This finding is reasonable and is supported by substantial evidence.
 
 
 11
 In further support of his well-founded fear claim, Pantoja-Dona introduced evidence that his family's food rations were restricted because he would not participate with the Sandinista Defense Committee ("CDS") activities. E.R. 90. The IJ stated that although petitioner's family had their food rations restricted, his family was not the only one that suffered from rationing and that it was not unusual in Nicaragua to be forced to resort to the black market for food. E.R. 91. The IJ also found that Pantoja-Dona was never, at any time, detained, interrogated, convicted or imprisoned in Nicaragua. E.R. 91. The IJ did not find that petitioner had established a well-founded fear based on actions taken against him or his family. E.R. 95-96.
 
 
 12
 We conclude that the BIA's finding that petitioner failed to establish past persecution or a well-founded fear of persecution is supported by substantial evidence.
 
 II. ADMINISTRATIVE NOTICE
 
 13
 This court reviews for an abuse of discretion the agency's decision whether to take administrative notice of facts, whether to allow rebuttal evidence of the noticed facts and whether the parties must be notified that notice will be taken. Castillo-Villagra v. INS, 972 F.2d 1017, 1028 (9th Cir.1992).
 
 
 14
 Pantoja-Dona claims that the IJ neither warned petitioner that he was going to take administrative notice nor gave petitioner an opportunity to rebut the noticed facts as required by Castillo-Villagra. 972 F.2d at 1029. However, the IJ specifically questioned petitioner about the changed political climate. E.R. 125. Petitioner had the opportunity to explain his belief that the change in government did not detract from his well-founded fear of persecution. E.R. 125-27. Accordingly, the IJ's taking of administrative notice was not an abuse of discretion. See Acewicz v. U.S. INS, 984 F.2d 1056 (9th Cir.1993) (holding that taking administrative notice is not an abuse of discretion where petitioner has an opportunity to introduce evidence before the IJ on the effect of the change of government).
 
 III. MOTION TO REOPEN PROCEEDINGS
 
 15
 The decision on an applicant's motion to reopen is reviewed for an abuse of discretion. INS v. Doherty, 502 U.S. 314, 324 (1992). The BIA may refuse to reopen proceedings if the alien does not establish a prima facie case for the relief sought. INS v. Abudu, 485 U.S. 94, 104 (1988). In order to establish a prima facie case, an alien must show that his deportation would "result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1).
 
 
 16
 Petitioner argues that the BIA did not consider the particular facts of his case. He claims that the BIA did not consider the hardship his deportation would cause his siblings and aunt and uncle, nor did it consider the special assistance he has provided to the community, especially the Spanish-speaking community.
 
 
 17
 The language of the statute does not require the BIA to consider the hardship to siblings or an aunt and uncle, even ones who consider the alien "like a son." 8 U.S.C. § 1254(a)(1). Nevertheless, the BIA did consider his family ties in the United States, but weighed that factor against being reunited with his three children and his parents in Nicaragua. E.R. 4.
 
 
 18
 Furthermore, the BIA considered petitioner's many years of exceptional service to his employer and his invaluable leadership in the local union. But after evaluating the relevant factors, the BIA determined that Pantoja-Dona's hardships could not be characterized as "extreme" and were the type common to all deportations. E.R. 4.
 
 
 19
 The BIA considered the particularized circumstances of petitioner's case and determined that petitioner had not met the extreme hardship standard. This determination was not "arbitrary, irrational, or contrary to law." See Caruncho v. INS, 68 F.3d 356, 360 (9th Cir.1995) (citations omitted). Therefore, the BIA did not abuse its discretion in declining to reopen the proceedings. Likewise, it did not abuse its discretion in finding that petitioner failed to establish that his deportation would result in "extreme hardship."
 
 Conclusion
 
 20
 In conclusion, the IJ's finding that Pantoja-Dona failed to establish past persecution or a well-founded fear of persecution is supported by substantial evidence[1] and his taking of administrative notice was proper. Furthermore, the BIA did not abuse its discretion in declining to reopen proceedings upon its finding that petitioner failed to establish that his deportation would result in "extreme hardship."
 
 
 21
 PETITIONS DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because Pantoja-Dona failed to establish eligibility for asylum, he cannot satisfy the higher standard required for withholding of deportation. "[F]ailure to satisfy the lesser standard of proof required to establish eligibility for asylum necessarily results in a failure to demonstrate eligibility for withholding of deportation as well." Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995)